EDITH H. JONES, Chief Judge:
The debtor, a former company officer, allegedly attempted to obtain one million dollars by falsely claiming an ownership interest in the company and threatening public exposure of alleged illegal activity. After the debtor lost an arbitration proceeding, he filed for bankruptcy. The question here is whether the company’s attorneys’ fees for the arbitration represent a nondischargeable debt under 11 U.S.C. § 523(a)(4) or (a)(6). We reverse and remand the summary judgment rendered against the creditors. The debt may have arisen for willful and malicious injury and may therefore be excepted from discharge by § 523(a)(6).

Background

Scott Shcolnik, the Appellee/Debtor, was an employee of Capstone Associated Services (“Capstone”) and Rapid Settlements Ltd. (“Rapid”), creditors who describe themselves as “alternative risk planning” companies. Shcolnik became Capstone’s vice-president and Rapid’s president. In 2004, he was offered an ownership interest in Rapid, but according to Appellants, he rejected the offer. Shcolnik nevertheless began to claim that he was a partial owner of Rapid, and he was fired. According to Appellants, he absconded with various documents from their offices. Shcolnik then *627 began threatening to disclose alleged criminal and regulatory violations by Rapid and Capstone if they did not “buy-out” his “ownership interests.” In emails, he referred to a “doomsday plan” which would be launched if Stewart Feldman, the primary owner of Rapid and Capstone, did not “properly compensate” him for his “ownership interests ... which appear to be worth in excess of $1,000,000.” He threatened a “massive series of legal attacks ... which will likely leave you disbarred, broke, professionally disgraced, and rotting in a prison cell,” and expressed his hope that Feldman would be the victim of prison rape.
Rapid and Capstone (along with other entities) initiated an arbitration proceeding seeking a declaratory judgment that Shcolnik did not own an interest in any of the entities. The arbitrator held in their favor and awarded $50,000 in attorneys’ fees to Rapid, Capstone, and the other entities. A state court confirmed the award.
Four days after the state court announced it would confirm the arbitration award, Shcolnik filed for Chapter 7 bankruptcy. Rapid and Capstone filed a complaint alleging that the $50,000 attorneys’ fee award was nondischargeable under, inter alia, 11 U.S.C. §§ 523(a)(4) and (a)(6), which except from discharge debts resulting from certain wrongful conduct. Both parties sought summary judgment on the non-dischargeability claims; the bankruptcy court granted the Debtor’s motion without issuing an opinion.[1] Rapid and Capstone appealed to the district court, which affirmed the bankruptcy court’s rulings. Appellants here contest only the rulings on the § 523 issues.
We address each in turn.

Standard of Review

This court reviews the bankruptcy court’s grant of summary judgment de novo, using the same standard employed by the district court. In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 328 (5th Cir.2007). We affirm summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Id. at 328 (citing Fed.R.Civ.P. 56(c)). Facts are in dispute if a jury could find in favor of the nonmovant and are material if they might affect the outcome of the suit under the law. Id. at 329.

Discussion

A.

11 U.S.C. § 523(a)(4) provides that a discharge does not discharge an individual debtor from any debt “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” 11 U.S.C. § 523(a)(4). Appellants allege that Debtor engaged in fraud or defalcation while acting in a fiduciary capacity. The district court concluded that Appellants failed to raise a genuine issue of material fact as to whether the Debtor acted in a fiduciary capacity for the purposes of § 523(a)(4).[2]
*628 Under § 523(a)(4), the term “fiduciary” is distinct from the concept of a “fiduciary” under the common law; it is “limited to instances involving express or technical trusts. The purported trustee’s duties must ... arise independent of any contractual obligation.” Matter of Tran, 151 F.3d 339, 342 (5th Cir.1998) (citations omitted). See also In re Hickman, 260 F.3d 400, 404-05 (5th Cir.2001). However, state law may create a fiduciary relationship whose breach leads to nondischargeability under § 523(a)(4). See In re Gupta, 394 F.3d 347, 350 (5th Cir.2004) (“This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable.”) (collecting cases). More precisely, we held a debt nondischargeable under § 523(a)(4) where the debtor, who did not deny that he was a fiduciary under the provision, was an officer of the creditor. See Matter of Moreno, 892 F.2d 417, 421 (5th Cir.1990).
Even if a corporate officer may be a fiduciary for purposes of § 523(a)(4), the debt at issue here is not a debt “for fraud or defalcation while acting in a fiduciary capacity.” 11 U.S.C. § 523(a)(4) (emphasis added). Appellants argue that Shcolnik violated his fiduciary duty by taking files belonging to them, which constitutes “defalcation.” It is true that defalcation does not require fraud or embezzlement, but only willful neglect of duty. Schwager v. Fallas, 121 F.3d 177, 182 (5th Cir.1997). But the debt here is not based on Shcolnik’s absconding with the documents; nor is it contended that Shcolnik owes Appellants the documents or their monetary equivalent. The only debt at issue here is the $50,000 in attorneys’ fees awarded in the arbitration proceeding, which resolved Shcolnik’s allegations that he owned an interest in the company. Appellants presumably would have pursued arbitration irrespective of Shcolnik’s threats relating to the documents. (“Due to Shcolnik’s false claims of ownership ... these entities were forced to institute an arbitration proceeding against Shcolnik .... Rapid and Capstone had actually incurred approximately $70,000 in attorney’s fees and costs in their efforts to disavow Shcolnik’s falsely claimed ownership.” In re Shcolnik, Ch. 7 Case No. 06-33328, Adv. No. 07-3124, slip op. at ¶¶ 10-11 (Bankr.S.D.Tex. Mar. 29, 2008) (emphasis added)). On this basis, we affirm the district and bankruptcy courts’ determination that Appellants failed to create a genuine issue of material fact regarding their § 523(a)(4) claim.

B.

Appellants also seek to exempt the $50,000 award as a debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.” 11 U.S.C. § 523(a)(6). They argue that Shcolnik used the stolen documents, threats of criminal reports, and claims of ownership in the company in tandem as a scheme to extract $1,000,000 from them in the guise of a “buyout” of his pretended “ownership interests.”[3]
*629 The district court held that Appellants could not establish a genuine issue of material fact as to willfulness, because they did not actually pay Shcolnik the million dollars he demanded. The court interpreted the Supreme Court to require that a debtor intend “the alleged injury itself’ in order to fulfill the willfulness component of 11 U.S.C. § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Kawaauhau held that a willful injury, in this context, is a “deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.” 523 U.S. at 61, 118 S.Ct. at 977. Appellants have neither alleged nor offered evidence that Shcolnik intended to inflict litigation costs on them, which is the debt for which they urge nondischargeability.
Unfortunately, the district court failed to consult this court’s opinions interpreting Kawaauhau. First, we have held that an injury is “‘willful and malicious’ where there is either an objective substantial certainty of harm or a subjective motive to cause harm.” In re Miller, 156 F.3d 598, 606 (5th Cir.1998); In re Williams, 337 F.3d 504, 508-09 (5th Cir.2003). Second, we noted that “it would seem peculiar to deem an action causing injury not ‘willful’ when the tortfeasor’s action was in fact motivated by a desire to cause injury.” Miller, 156 F.3d at 604. In an opinion nearly contemporaneous with Miller, this court stated that “ ‘the debtor must have intended the actual injury that resulted.’ ” State of Texas v. Walker, 142 F.3d 813, 823 (5th Cir.1998) (quoting In re Delaney, 97 F.3d 800, 802 (5th Cir.1996)). This statement, however, arose in the course of distinguishing willful and malicious injury, as understood in Kawaauhau, from claims for breach of contract or conversion, neither of which “necessarily involves an intentional injury.” Id.
More recently, this court held that a debt for sanctions imposed because of the debtors’ litigation tactics arose from willful and malicious injury under § 523(a)(6). In re Keaty, 397 F.3d 264 (5th Cir.2005). The debtors’ intended injury was “harassment” through baseless litigation, but their actions were “substantially certain to ... cause ... financial injury.” Id. at 274. The relationship between the debtor’s motivation and the injury in this case is slightly different from that in Keaty: Shcolnik allegedly engaged in a course of contumacious conduct that required the Appellants to file meritorious litigation against him, resulting in the instant fee award; whereas in Keaty, the debtors pursued the burdensome suit that provoked a sanctions award against them. This is a distinction without a difference, however. It would make no sense for the infliction of expense in litigating a merit-less legal claim to constitute willful and malicious injury to the creditor, as in Keaty, while denying the same treatment here to the infliction of expense by a debtor’s attempt to leverage an equally baseless claim through a campaign of coercion. That Texas law may allow the arbitrator to assess attorneys’ fees in favor of a party without specifically finding a willful and malicious injury is not conclusive.[4] If the facts are as Appellants *630 allege, Shcolnik either had the motive to inflict harm or acted so as to create “an objective substantial certainty of harm” to the Appellants. Id.
Viewed in light of our precedents, there is a genuine, material fact issue for trial. Shcolnik’s behavior resulted in willful and malicious injury if his claims of ownership were made in bad faith as a pretense to extract money from the Appellants. See Keaty, 397 F.3d at 273 (willful and malicious injury to intentionally “pursu[e] meritless litigation for the purpose of harassment[.]”). The litigation costs he forced upon them are different from the million dollar claim he made against them, but they were neither attenuated nor unforeseeable from his alleged intentionally injurious conduct.

CONCLUSION

For the foregoing reasons, we reverse and remand this case for trial on the merits under 11 U.S.C. § 523(a)(6).
REVERSED and REMANDED.

. The bankruptcy court held a trial on the remaining issues, which are not relevant to this appeal, then ruled in Debtor's favor on those issues.

. In one paragraph, Appellants now additionally contend that Shcolnik’s purloining of company records also violated § 523(a)(4). They made no such argument at the district court, which properly deemed any arguments regarding "embezzlement'' and "larceny” waived. This court does not consider arguments an appellant failed to raise in the district court absent exceptional circumstances, even if those issues were raised in the bank *628 ruptcy court. In re Bradley, 501 F.3d 421, 433 (5th Cir.2007) (collecting cases).

. In addition to the arbitration action regarding Shcolnik's purported ownership interest, Appellants pursued injunctive relief regarding documents he claimed to possess and his threats to disclose secrets. They obtained temporary restraining orders preventing Shcolnik from disclosing trade secrets or confidential information. The state court found that Shcolnik had "threatened a wide range of unlawful and improper actions.”

. The arbitrator awarded the $50,000 in attorneys’ fees which it found to be “reasonable and necessary and appropriate pursuant to Tex. Civ. Proc. & Rem. Code Ann. § 37.001, et seq.” Section 37.009 provides for “costs and reasonable and necessary attorney’s fees as are equitable and just.” While the arbitrator made no specific finding of the wrongfulness of Shcolnik’s behavior, or of whether his claims of ownership were made in bad faith, this is not dispositive evidence that his claims were made in good faith. Such findings were not required for an award of attorneys' fees under § 37.009. We note that the arbitrator *630 did specifically find, however, that Shcolnik had never been part owner of either Appellant under any of the theories he pled.